FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

00 NOV 21  PM 3: 24

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN CLOPTON, individually and ) on behalf of all others similarly ) situated, )
)
    Plaintiff, )
)
    v. )        CV 00-BU-0196-S
)
BUDGET RENT A CAR )
CORPORATION, )
)
    Defendant. )

**ENTERED**

NOV 2 1 2000

## Memorandum Opinion

Now before the Court is a motion filed by Plaintiff John Clopton for class certification. (Doc. No. 32). Clopton seeks for the Court, pursuant to Federal Rules of Civil Procedure 23(a) and either (b)(2) or (b)(3), to certify the following class:

> Those persons in the United States who have rented vehicles in the past four years from Budget Rent A Car Corporation or one of its licensees[1] and who have: (1) used less than one full tank of fuel; and (2) returned the vehicle with less fuel than when received, having not previously purchased the

---

[1] In his motion and original brief in support of class certification, Clopton proposed that the Court certify a class only of those who rented vehicles from Budget Rent A Car Corporation ("Budget"), not also those who rented from Budget's licensees. It was in Clopton's subsequent "corrected" brief that he first sought to include those renting from licensees as well. In responding to Clopton's "corrected" brief, Budget clearly recognized that Clopton was now seeking to include in the class those who rented vehicles from either Budget or one of Budget's licensees. Given Budget's acknowledgment of Clopton's redefinition of the proposed class, the Court will address the certification issue using that redefinition.



entire tank of fuel.[2]

In support of his motion, Plaintiff filed evidence and original and "corrected" briefs, while Defendant Budget Rent A Car Corporation responded likewise with briefs and evidence in opposition. Plaintiff then submitted a reply brief, and the motion is now ripe for decision. Upon due consideration, the Court concludes that the motion for class certification is due to be DENIED.

## I. BACKGROUND

Budget Rent A Car Corporation ("Budget") is one of the largest automobile and truck rental companies in the United States and the world. It owns and operates approximately 700 motor vehicle rental locations throughout North America, and, in addition to these company-operated locations, about 800 other rental locations are owned and operated by licensees using the "Budget" name. One of these licensees is Adamson Car & Truck Rental, Inc. ("Adamson"), which does business at three locations in the greater-Birmingham, Alabama area as Budget Rent-A-Car of Birmingham.

On October 29, 1999, Clopton walked into one of Adamson's locations and rented a Mercury Tracer automobile. At that time, Clopton signed a rental agreement indicating that the rental rates quoted to him did not include gasoline. The agreement suggested that Clopton might prepay for the full tank of gasoline that was in the vehicle, albeit with no credit being available for unused fuel, but Clopton did not choose this option. The agreement also stated that a service charge of $2.99 per gallon would be applicable for refueling the vehicle if it was returned with less than a full tank of gasoline, explaining on

---

[2]Clopton would have excluded from this proposed class: (1) Defendant, Budget Rent A Car Corporation, and all of its directors, officers, agents and employees; (2) claims by any person or entity who timely opts out of this proceeding; (3) all currently serving Federal judges and magistrates of the State of Alabama, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such justices, judges and spouses; and (4) any person who has given a valid release concerning the claims asserted in this suit.

the reverse side as follows:

> FUEL: Renter will pay for or replace all fuel provided by Budget. The refueling charge is determined by multiplying the number of gallons needed to refill the tank (to the same level as when received) times the dollar-per-gallon rate specified on the front of this Agreement. Renter agrees that the number of gallons needed to refill the tank may be estimated based on the fuel-gauge reading or the miles driven.

In his amended complaint, Clopton has asserted that this or substantially similar language appears in the agreements for all rentals from every Budget location in the United States, with the possible exception of Hawaii, regardless of whether the location is owned and operated by Budget or by one of its licensees. In addition, Clopton contends that, upon renting the vehicle, he was provided with another document, which stated, among other things: "Gasoline is not included in our rates. Upon return an estimate of the refueling charges will be made and any significant differences will be adjusted later." The evidence shows, however, that this document given to Clopton was prepared by Adamson, not Budget.

Clopton returned the automobile to the same location on November 1, 1999, after driving it 211 miles without refueling. When Clopton brought the vehicle back in, an Adamson representative asked him whether he would like to take the car back out and refill the tank himself to avoid the refueling charge, but Clopton declined. He then signed a final invoice indicating that he was being charged $36.62 for gasoline, which at the $2.99-per-gallon refueling rate specified by his agreement translated to 12.25 gallons of gasoline. Later, after coming to believe that he had been overcharged for refueling, Clopton filed this putative class action in this Court.

Clopton's original complaint named only Budget as a defendant, but he filed an amended complaint that added Adamson as a defendant. Adamson has since been voluntarily dismissed, leaving only Clopton's individual and potential class claims against Budget. In his amended complaint, Clopton suggests that the licensees who own and

operate locations under the "Budget" name, such as Adamson, are acting as agents of Budget when they rent vehicles to customers.[3]  With respect to the substantive factual allegations underlying his claims, Clopton contends that Budget and its licensees unlawfully charge consumers like himself for fuel not actually used.[4]  More specifically, Clopton charges that Budget, both at its company-operated locations and through its alleged agent-licensees, frequently overstates the number of gallons needed to refill the tank of a vehicle upon its return by assigning an artificially low rate of approximately 17.22 miles per gallon ("MPG") to its entire fleet of vehicles.  See Amended Complaint at ¶ 30-31.  Using his own case as an example, Clopton points out that he drove his Mercury Tracer 211 miles, which would deplete, he claims, about 7 gallons of gasoline.[5]  Id. at 31.  Using the $2.99 per-gallon refueling rate in his agreement, a refueling charge of about $20.93 would thus be indicated.  Id.  But instead of arriving at the seven-gallon figure, either by refilling the tank and checking the amount of fuel actually pumped or by assigning an "appropriate" rate for the Mercury Tracer,[6] Budget allegedly used the artificially-low, fleet-wide rate of 17.22 MPG.  Id.  This translated to a calculation of 12.25 gallons needed to refill the tank and an actual refueling charge of $36.62.  Id.  Clopton

---

[3]One of Budget's central themes on why class certification should be denied is that it does not direct the day-to-day operations or fuel charge practices of its licensees, including Adamson.  Thus, Budget alleges, its licensees are independent and do not act as Budget's agents.  However, the Court will assume the truth of Clopton's assertion to the contrary for purposes of deciding the motion for class certification.

[4]Clopton also complains in passing that the $2.99-per-gallon refueling rate to which he agreed is "exorbitant" and typical of the refueling service charge rates charged by Budget generally.  However, Budget's refueling rates are not the subject of Clopton's individual or class claims.

[5]Clopton does not explain how he arrived at this seven-gallon figure.

[6]Given that Clopton has suggested that he should have been charged for using only about 7 gallons of gasoline for his 211 miles of driving, it would appear that Clopton believes an "appropriate"MPG rating for the Mercury Tracer is about 30.

was thus overcharged, he claims, for about 5.25 gallons of gasoline he did not actually use, at an additional cost of about $15.70. Id. Further, Clopton alleges Budget routinely fails to make any adjustments or refunds for overcharges for fuel not actually used, even though Budget has sufficient information, Clopton avers, to determine whether such an overcharge has occurred after Budget actually refills the vehicle after its return. Id. at ¶ 23.

Based on the foregoing allegations, Clopton asserts a federal law cause of action and several state-law claims. In his federal claim, Clopton seeks to recover against Budget under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), with the predicate acts of "racketeering activity" being alleged violations of federal wire and mail fraud statutes, see 18 U.S.C.A. §§ 1341, 1343, 1964(c). With respect to his state-law claims, Clopton avers that Budget is liable under theories of breach of contract, "unjust enrichment/disgorgement," "money paid by mistake," fraudulent misrepresentation, and fraudulent suppression.[7] Clopton now moves the Court to certify a nationwide class, with him acting as class representative, for the litigation of all of his claims. Budget has responded by arguing that class certification is improper.

## II. CONTENTIONS & ANALYSIS

Class actions are governed by Fed. R. Civ. P. 23. With respect to such actions, the Supreme Court has stated generally:

> The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 2557-2558, 61 L.Ed.2d 176. Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the

---

[7]Clopton suggests in his brief that Alabama law would govern his state-law claims insofar as they pertain to him individually, although he does not specify or discuss which State's law would apply to the extent the claims apply to other potential class members.

> class.' Id., at 701, 99 S.CT., at 2557. For in such cases, 'the class-action
> device saves the resources of both the courts and the parties by permitting
> an issue potentially affecting every [class member] to be litigated in an
> economical fashion under Rule 23.' Ibid.

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155 (1982). A district court

is to make the determination of whether an action should proceed as a class action "[a]s

soon as practicable after the commencement of an action brought as a class action . . . ."

Fed. R. Civ. P. 23(c)(1). "The decision to certify is within the broad discretion of the

court, but that discretion must be exercised within the framework of rule 23." Culpepper

v. Inland Mortgage Corp., 189 F.R.D. 668, 669 (N.D. Ala. 1999) (quoting Castano v.

American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996)).

The initial burden of proof to establish the propriety of class certification rests with

the advocate of the class. Jones v. Diamond, 519 F.2d 1090, 1099 (5th Cir. 1975).[8] "A class

action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P.

23(a) and at least one of the alternative requirements of Rule 23(b)." Jackson v. Motel 6

Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997). In the instant case, Clopton seeks

for the Court to certify a class under Rule 23(a) and either Rule 23(b)(2) or (b)(3). Those

provisions state as follows:

> a) Prerequisites to a Class Action. One or more members of a class
> may sue or be sued as representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses
> of the representative parties are typical of the claims or defenses of the class,
> and (4) the representative parties will fairly and adequately protect the
> interests of the class.
> b) Class Actions Maintainable. An action may be maintained as a
> class action if the prerequisites of subdivision (a) are satisfied, and in

---

[8]All decisions of the United States Court of Appeals for the Fifth Circuit handed down
prior to the close of business on September 30, 1981 are binding precedent in the Eleventh
Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

addition:

....

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(a), (b)(2) & (b)(3).

It is well settled that a court is not to conduct a preliminary inquiry into the merits of a suit when deciding whether it may be maintained as a class action. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quoting Miller v. Mackey International, 452 F.2d 424, 427 (5th Cir. 1971))). However, a court may look beyond the allegations of the complaint in assessing whether a motion for class certification should be granted. See General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982). "It is inescapable that in some cases there will be overlap between the demands of Rule 23(a) and (b) and the question of whether plaintiff can succeed on the merits." Huff v. N.D. Cass Co., 485 F.2d 710, 714 (5th Cir. 1973) (en banc) (quoted in Rutstein v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228, 1234 (11th Cir. 2000)). Indeed, the Supreme Court has noted as follows:

>"Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits."

Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.12 (1978) (quoting 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911, p. 485 n.45 (1976)).

## A. Certification under Rule 23(b)(2)

Clopton first contends that his claims might be certified as a class action under Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) provides for certification of a class where the prerequisites of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Assuming for the moment that this action meets the requirements of Rule 23(a), the Court concludes that it is not appropriate for certification under Rule 23(b)(2). "[Rule 23(b)(2)] dos not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Advisory Committee Note to 1966 Amendment to Fed. R. Civ. P. 23(b)(2) (quoted in Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983)). See also Vaughter v. Eastern Air Lines, Inc., 817 F.2d 685, 690 (11th Cir. 1987) ("Certainly, Rule 23(b)(2) was not applicable, as the suit [claiming ERISA violations, breach of contract, negligence, unjust enrichment, and conversion] seeks more than just the injunctive and declaratory relief generally available under that provision.") Hoping to fall within the scope of Rule 23(b)(2), Clopton emphasizes that he has requested in his amended complaint "declaratory and injunctive relief to prevent [Budget] from continuing in its illegal conduct," and he argues that his claims for compensatory and punitive damages are merely "ancillary" to the equitable relief he requests. The Court disagrees. Clopton is asserting fraud-based RICO claims and what are essentially state-law

fraud and breach-of-contract claims. It can hardly be seriously argued that Clopton is predominantly seeking something other than the legal remedy of money damages, not the equitable remedies specified by Rule 23(b)(2). The Court finds certification is not proper under Rule 23(b)(2). See Powers v. Government Employees Ins. Co., 192 F.R.D. 313, 318 (S.D. Fla. 1998); Pickett v. IBP, Inc., 182 F.R.D. 647, 657 (M.D. Ala. 1998).

### B. Certification under Rule 23(b)(3)

Clopton also argues that certification of his claims lies under Fed. R. Civ. P. 23(b)(3). It provides for certification of a class where the prerequisites of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Again, even assuming that the requirements of Rule 23(a) have been met, the Court determines that class certification is not appropriate under Rule 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted). "In order to determine whether common questions predominate, '[a court is] called upon to examine the cause[s] of action asserted in the complaint on behalf of the putative class.' " Rutstein, 211 F.3d at 1234 (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C. Cir. 1984)). To qualify as a Rule 23(b)(3) class action, " 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.' " Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th Cir. 1989) (quoting Nichols v. Mobile Bd. of Realtors, Inc., 675 F.2d 671, 676 (5th Cir. Unit B 1982)). "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." Jackson v. Motel 6

Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (quoting Amchem Products, 521 U.S. at 623-24).

As a threshold matter, it must be noted that following the initial discovery on class issues, Clopton appears to have all but abandoned pursuit of proving one of the central allegations of his amended complaint: that Budget and its licensees assign a fleet-wide MPG ratio for use in calculating the amount of gasoline used by customers based on the mileage driven, which results in class-wide refueling overcharges. While Clopton clings to the position that the "essence" of his complaint is that Budget breached its rental agreements with customers by charging for gasoline not actually used, Plaintiff's Reply at 17, he fails to mention the specific fleet-wide MPG allegation anywhere in his briefs. Indeed, Clopton states that he is willing to assume the truth of evidence indicating that Budget has a general policy or practice at its corporate locations of using computer systems to automatically calculate the amount of gasoline used and that these systems incorporate the tank size and Environmental Protection Agency's "city" MPG rating for each make and model of vehicle Budget rents. [9] Further, Clopton does not dispute Budget's assertion that it does not provide these computer systems to its licensees, such as Adamson, and that Budget does not dictate how licensees are to calculate fuel consumption or refueling charges. Clopton argues, however, that whether or not the computer systems are utilized, the standard contract language allegedly used by both Budget and its licensees indicates that the calculation of the amount of fuel consumed, for

---

[9]Clopton asserts that because Budget's computer systems use the "city" fuel efficiency rating, the system will overestimate the amount of gasoline used by a customer who has driven the vehicle primarily on the highway. However, this claim is not alleged in Clopton's complaint, and he is obviously not a proper representative to bring such a claim in any event. The undisputed evidence shows that Adamson, like other licensees, does not use Budget's computer systems to calculate fuel consumption, that Adamson did not use such systems in Clopton's case, and that Clopton used the vehicle he rented from Adamson primarily under city driving conditions.

purposes of assessing refueling charges against class members, is still dependent on observations made by employees of the mileage driven or the fuel gauge reading after the vehicles are returned. Clopton also points to evidence he submitted indicating that Budget received over 17,465 complaints regarding fuel between May 19, 1998 and June 29, 2000.[10] Given this number of complaints, Clopton argues, it appears that Budget either does not always follow its policy by using these systems and/or that the systems "routinely allow for human error." Plaintiff's Reply Brief at 2. While Clopton cites a number of issues he claims are common to the class and will predominate over individual issues,[11] the Court finds otherwise.

_____

[10]Clopton has offered the evidence of these complaints without supplying any context at all. Clopton separated the complaints into categories entitled, "Fuel Misunderstanding," "Fuel Overbilling," and "Fuel Disputes." However, he has not offered any definitions for these terms or any explanation how they might differ. He has not stated whether they encompass all fuel-related complaints made worldwide, or just those in the United States or North America, or whether they represent complaints regarding rentals from Budget's corporate and licensee locations or just from the former. Clopton does not attempt to show what portion of the complaints actually might be similar to his claims, or whether they relate to issues outside their scope, such as the price-per-gallon rates Budget uses for refueling service charges. Clopton has also failed to offer any evidence tending to show what percentage of Budget's rentals these complaints might represent. While the number 17,465 might seem large in a vacuum, the Court calculates that it amounts to an average of approximately 23.6 complaints per day, or, assuming that these complaints were generated in North America and relate only to Budget's 700-or-so corporate locations, about 12.5 complaints per location per year. If the approximately 800 licensee locations are also included, this number drops to about 5.8 complaints per location per year. Given that Budget's fleet in the United States is, according to Clopton's allegations, about 150,000 vehicles, and that each location likely engages in at least hundreds of rental transactions per year, the number of complaints hardly seems so daunting.

[11]Clopton claims that the following issues are common to the class and predominate over individual issues: (1) whether Budget has a contractual obligation to charge class members only for fuel actually used; (2) whether Budget in fact charges class members for fuel that they do not actually use; (3) whether Budget's conduct in charging class members for fuel that they do not actually use constitutes a breach of its contractual obligations to said class members; (4) whether defendant's conduct in charging class members for fuel they do not actually use resulted in damages to said class members; (5) whether defendant's conduct in charging class members for fuel that they do not actually use constitutes a fraudulent scheme; (6) whether Budget and its company owned and/or franchised stores constitute an enterprise; (7)  whether Budget and its

With respect to Clopton's contract-based claims, which the Court here construes to include his separately denominated counts of "breach of contract," "unjust enrichment/disgorgement" and "money paid by mistake," the Court will assume that all class members received rental agreements with substantially similar language regarding refueling charges. However, even if Clopton were to show that he was charged for gasoline he did not use and that such constituted a breach, such would do little to materially advance the litigation with respect to the other class members contract claims. Their claims, like his, would rise or fall based almost entirely on highly individualized circumstances with respect to whether each particular class member was, in fact, charged for an amount of fuel he or she did not use and whether the charge for such amount constituted a breach of the rental agreement. While the allegations of Clopton's amended complaint suggest that Budget applied a uniform policy (the "artificially low" MPG rating) class-wide that caused Budget to breach its contractual obligations regarding refueling charges, it is manifest at this point in the proceedings that Clopton is not going to be seeking to establish any of his claims based on evidence of such a uniform practice. It appears, rather, that Clopton's allegations regarding charges for fuel not actually used would be proven, if at all, by affirmatively showing that Budget <u>failed</u> to follow established procedures and/or there was otherwise some random element of "human error" that caused him to be charged for gasoline he did not use. Indeed, it appears that Clopton's individual contract-based claims will likely boil down to a factual dispute about how full the tank of his vehicle was when he returned it and whether a particular

---

company owned and/or franchised owned stores engaged in a pattern of racketeering activity; (8) whether Budget and its company owned and/or franchised owned stores utilized the U.S. mails and/or wires to engage in a pattern of racketeering activity; (9) whether the plaintiff and member of the Class are entitled to declaratory and injunctive relief; and (10) whether Budget adhered to its stated policy of estimating the refueling charges and making adjustments for "any significant differences" later. See Plaintiff's Brief at 19-20.

Adamson employee used an erroneous assumption as to the size of the tank to calculate the refueling charge..[12] Such evidence of individualized conduct on the part of employees of Budget and its licensees indicates that the Court would have to conduct thousands of fact-intensive mini-trials to determine breach and damages with respect to each member's contract-based claims. To further complicate matters, it appears that the laws of all 50 jurisdictions would be applicable to these claims. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 815-822 (1985); Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1024 (11th Cir. 1996) ("Scrutinizing hundreds of 900-number programs under the provisions of fifty jurisdictions complicates matters exponentially"); Castano v. American Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996). Therefore, despite the alleged uniformity of the contracts, the Court finds these claims are inappropriate for class treatment under Rule 23(b)(3). See, e.g., Gibbs Properties Corp. v. CIGNA Corp., 196 F.R.D. 430, 441 (M.D. Fla. 2000).

Similar problems are also present with respect to Clopton's fraud-based claims, brought under RICO and state law. First, Clopton's state law claim of fraudulent suppression is founded upon the allegation that Budget failed to disclose that it uses an "artificially low" MPG rating on a fleet-wide basis to calculate the amount of fuel used by class members. However, as explained previously, Clopton acknowledges that Budget does not use a single MPG rating for its vehicles. Thus, the central issue of whether Budget failed to disclose the material fact alleged by Clopton is not subject to generalized proof. Clopton also seeks certification under Rule 23(b)(3) of his RICO claims, which are

---

[12]Clopton claims that, when he returned the vehicle to Adamson, the fuel guage indicated that he had about one-half of the tank remaining. An Adamson employee, however, stated that the fuel guage indicated that the tank was only one-eighth full. Adamson now admits that in Clopton's case it calculated the number of gallons expended using an incorrect assumption as to the size of the tank of his vehicle. However, there has been absolutely no showing that this occurred as a result of any broader policy or practice instituted by Budget.

based on allegations of mail and wire fraud. Such claims, however, "are not wholly subject to class-wide resolution" because "each plaintiff must demonstrate reliance on deceptive conduct in furtherance of the alleged RICO scheme." Andrews, 95 F.3d at 1024 (citing Pelletier v. Zweifel, 921 F.2d 1465, 1499-1500 (11th Cir. 1991); Alabama v. Blue Bird Body, Co., 573 F.2d 309, 328-29 (5th Cir. 1978). See also Mack v. General Motors Acceptance Corp., 169 F.R.D. 671, 680 (M.D. Ala. 1996). His state law misrepresentation claim entails the same difficulties. See Pipes v. American Sec. Ins. Co., 169 F.R.D. 382, 384 & n.2 (N.D. Ala. 1996) (noting that state law fraud claims were inappropriate for class treatment, citing Andrews). Furthermore, Clopton's claims alleging misrepresentation, brought under both RICO and state law, are founded upon the assertion that Budget falsely stated that it charged only for fuel that customer actually use. However, if an individual class member was only charged for fuel actually used, he would not have even received a false representation. Therefore, it the fraud-based claims, like his contract claims, would hinge primarily on fact-specific inquiries into the conduct of individual employees of Budget and its licensees with regard to whether a particular class member was charged for gasoline not used. Finally, the state law fraud claims would also require the application of the law of all 50 jurisdictions, introducing additional complications. The Court finds that, in the absence of some preliminary showing that Budget and its licensees employed a uniform policy regarding fuel use calculation, individual issues of whether a material fact was misrepresented to a particular class member and whether such class member detrimentally relied thereupon predominates over any common issues. The Court concludes that Clopton's claims alleging RICO violations, fraudulent misrepresentation, and fraudulent suppression are not appropriate for class treatment under Fed. R. Civ. P. 23(b)(3).

## III. CONCLUSION

Based on the foregoing, the Court has determined that Clopton's class claims are

not suitable for class treatment under either Fed. R. Civ. P. 23(b)(2) or (b)(3).  Therefore, Clopton's motion for class certification (Doc. No. 32). is due to be DENIED.  A separate order will be entered.

DONE this __21st__ day of November, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE